IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JACOB C. JOHNSON,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0042

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    *Johnson's Education and Employment Background* . . . . . . . . . . . 5
    B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    *Johnson's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 6
    C.    *Johnson's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . 12
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . 15
        1.    *Dr. Safdar's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Non-Medical Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . 20
    C.    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jacob C. Johnson on April 24, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Johnson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Johnson requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On February 24, 2010, Johnson applied for both disability insurance benefits and SSI benefits. In his applications, Johnson alleged an inability to work since February 15, 2010 due to eye problems, depression, attention-deficit hyperactivity disorder ("ADHD"), obsessive-compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD"). Johnson's applications were denied on June 1, 2010. On November 20, 2010, his applications were denied on reconsideration. On January 5, 2011, Johnson requested an administrative hearing before an Administrative Law Judge ("ALJ"). On February 29, 2012, Johnson appeared via video conference with his attorney before ALJ Tom L. Morris for an administrative hearing. Johnson and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated April 7, 2012, the ALJ denied Johnson's claims. The ALJ determined that Johnson was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Johnson appealed the ALJ's decision. On February 21, 2013, the Appeals Council denied Johnson's request for review. Consequently, the ALJ's April 7, 2012 decision was adopted as the Commissioner's final decision.

On April 24, 2013, Johnson filed this action for judicial review. The Commissioner filed an Answer on August 21, 2013. On September 23, 2013, Johnson filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 19, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 30, 2013, Johnson filed a reply brief. On July 17, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.

4

2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Johnson's Education and Employment Background

Johnson was born in 1989. He is a high school graduate. At the administrative hearing, Johnson testified that he was enrolled in special education classes for most of his schooling. He stated he has difficulty with reading and spelling. Career counseling through the school helped Johnson secure a job. Since high school, Johnson has worked part-time (20-24 hours per week) bagging groceries at a Fareway store. During his first year of working, a job coach met with him periodically to help him adjust to employment.

### B. Administrative Hearing Testimony

#### 1. Johnson's Testimony

At the administrative hearing, Johnson explained that he lived on his own, in his own apartment, but received help and support from his parents. Johnson's mother helps him with household issues, while his father helps him by keeping track of his appointments and taking him to his appointments. Johnson stated that he calls his parents on a daily basis for help and support.

Johnson's attorney questioned Johnson about his mental health difficulties. Johnson testified that he suffers from ADHD, OCD, and depression. Without proper medication, Johnson's ADHD makes it difficult for him to concentrate at work. Similarly, Johnson stated that without medication, his depression causes him to have difficulty interacting with other people. Johnson further stated that he generally "hangs out" by himself. According

5

to Johnson, while likes to go to movies or out for a hamburger, he generally does these things by himself.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who:

> is limited to no exertional limitation, limited to 2-3 step tasks. Occasional contact with supervisors, coworkers, and the public. No more than regular pace. No transactional interaction[] such as sales or negotiations.

(Administrative Record at 66.) The vocational expert testified that under such limitations, Johnson could perform his past work, and also perform the following jobs: (1) laundry worker (2,600 positions in Iowa and 221,000 positions in the nation), (2) cleaner/housekeeper at a hotel (5,000 positions in Iowa and 543,000 positions in the nation), and (3) dining room or cafeteria attendant (2,000 positions in Iowa and 276,000 positions in the nation). The ALJ provided the vocational expert with another hypothetical for an individual with:

> no exertional limits, limited to simple, routine tasks, hearing and understanding simple oral instructions, simple work-related decisions, tolerating occasional[] changes in a routine work setting. No close attention to detail.

(Administrative Record at 68.) The vocational expert answered that Johnson could perform both his past work and the other work associated with the first hypothetical. Lastly, the ALJ inquired whether an individual who was off task for one-third of an eight-hour workday could perform the jobs discussed in the earlier hypotheticals. The vocational expert testified that such a limitation would preclude competitive employment.

### C. *Johnson's Medical History*

On September 5, 2008, Johnson presented to Dr. Ali Safdar, M.D., for an initial psychiatric evaluation. At the time of his evaluation, Johnson's primary concern was

difficulty sleeping. Dr. Safdar noted that Johnson "has a long history of ADHD, PTSD and OCD. He has been hospitalized . . . close to 17 times. . . . His father indicated that he has been on a lot of different medications but the current combination of meds seems to be working well for him."[1] Upon examination, Johnson reported that he was "doing and feeling fairly well."[2] Dr. Safdar noted that Johnson was "in a good mood and in good control. His father indicates that he has been doing fairly well overall."[3] Dr. Safdar diagnosed Johnson with ADHD and history of OCD and PTSD. Dr. Safdar recommended medication as treatment.

On June 19, 2009, Johnson was referred to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. Upon examination and testing, Dr. Stientjes opined that:

> [Johnson] can understand and remember simple oral and written instructions. Dependence on written instructions only should be avoided. He can carry out repetitive tasks, but will need supportive supervision. Interactions with others tend to be intense and he is demanding of being the focus of attention. Safety judgment is impaired by both vision and judgment. Workplace changes will require repetition and demonstration.

(Administrative Record at 534.) Dr. Stientjes diagnosed Johnson with reactive attachment disorder, ADHD, and oppositional defiant disorder. Dr. Stientjes concluded that:

> For the past year [Johnson] has maintained partial employment and, while that is likely to continue, he is unlikely to progress beyond marginal jobs and there could be periods when he is overwhelmed, resulting in decompensation. Full time competitive employment is unlikely to be sustained.

(Administrative Record at 535.)

---

[1] Administrative Record at 523.

[2] *Id.*

[3] *Id.*

On July 8, 2009, Dr. Philip Laughlin, Ph.D., reviewed Johnson's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Johnson. On the Psychiatric Review Technique assessment, Dr. Laughlin diagnosed Johnson with ADHD, OCD, and reactive attachment disorder. Dr. Laughlin determined that Johnson had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Laughlin determined that Johnson was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dr. Laughlin concluded that:

> The evidence in file is consistent with the allegations, and no inconsistencies across sources of information are noted. [Johnson's] allegations are credible. [His] impairment while limiting does not preclude him from performing simple one-two step commands on a sustained basis.

(Administrative Record at 558.)

On April 26, 2010, Dr. Sandra Davis, Ph.D., reviewed Johnson's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for

Johnson. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Johnson with ADHD, mood disorder/major depressive disorder, PTSD, OCD (under fair control), and reactive attachment disorder. Dr. Davis determined that Johnson had the following limitations: moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Johnson was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions. Dr. Davis concluded that:

> [Johnson] has some work related limitations, but many are due to his visual problems. He should be able to understand, remember, and carry out simple tasks but will have some problems as they become more detailed. He will benefit from supportive supervision in the early learning phases of a task or when substantial change is underway. While family noted a short temper, he apparently has controlled that reasonably well in the workplace.

> The medical evidence is pretty consistent, with some past diagnostic variability. A good number of his problems have responded well to medications. There are no challenges to the credibility of [Johnson's] allegations.

(Administrative Record at 590.)

On July 23, 2010, Dr. Safdar, Johnson's treating psychiatrist, provided DDS with a letter relating to Johnson's mental health condition. In the letter, Dr. Safdar indicated that Johnson had been his patient since September 2008. Dr. Safdar diagnosed Johnson with ADHD and mood disorder. Dr. Safdar observed that Johnson has symptoms of

"mood instability, attention and concentration and organization problems and is not functioning very well."[4] Dr. Safdar opined that "[t]his condition interferes with his ability to seek and maintain employment. He is certainly not capable of full time competitive employment at this time and any assistance that he can get will be greatly appreciated."[5]

On September 13, 2010, at the request of Johnson's attorney, Dr. Safdar filled out a "Mental Impairment Questionnaire" for Johnson. Dr. Safdar diagnosed Johnson with ADHD and mood disorder. Dr. Safdar noted that Johnson's medications cause dizziness, drowsiness, fatigue, and lethargy. Dr. Safdar identified the following signs and symptoms for Johnson: decreased energy, impairment in impulse control, mood disturbance, difficulty thinking or concentrating, recurrent obsessions or compulsions which are a source of marked distress, intense and unstable interpersonal relationships and impulsive and damaging behavior, hyperactivity, flight of ideas, inflated self-esteem, pressures of speech, easy distractability, and sleep disturbance. Dr. Safdar determined that Johnson was seriously limited in his ability to: maintain attention for two hour segments, sustain an ordinary work routine without special supervision, work in coordination with or proximity to others without being unduly distracted, complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, be aware of normal hazards and take appropriate precautions, understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semi-skilled or skilled work, maintain socially appropriate behavior, and travel in unfamiliar places. Dr. Safdar

---

[4] Administrative Record at 629.

[5] *Id.*

further determined that Johnson had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Lastly, Dr. Safdar opined that Johnson would miss four or more days of work per month due to his impairments or treatment for his impairments.

On November 15, 2010, Dr. Lon Olsen, Ph.D., reviewed Johnson's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Johnson. On the Psychiatric Review Technique assessment, Dr. Olsen diagnosed Johnson with ADHD and mood disorder. Dr. Olsen determined that Johnson had the following limitations: moderate restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Olsen determined that Johnson was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Olsen concluded that:

> [Johnson's] allegations about his functional limitations are credible and his presentation is consistent. He attributes several of his limitations to his physical condition, not his mental condition. He would be capable of performing 2- and 3-step activities that do not require intense concentration or independent planning or decision making. He will need some support when adjusting to changes in routine.

(Administrative Record at 644.)

11

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Johnson is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Johnson had not engaged in substantial gainful activity since February 15, 2010.[6] At the second step, the

---

[6] In his decision, the ALJ noted that:
> [Johnson] worked after the alleged disability onset date[.] . . . [He] testified that he had been working on a part-time basis as a grocery bagger at Fareway since 2008, working 20-24 hours per week at $8.00 per hour. Because this work activity did not rise to the level of substantial gainful activity, the undersigned proceeds with the sequential evaluation below. . . .

(continued...)

13

ALJ concluded from the medical evidence that Johnson has the following severe impairments: ADHD and mood disorder.[7] At the third step, the ALJ found that Johnson did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Johnson's RFC as follows:

> [Johnson] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be limited to two or three step tasks; occasional contact with supervisors, coworkers, and the public; no more than a regular pace; no transactional interaction such as sales or negotiations; restricted from hazards such as heights or machinery but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Johnson was unable to perform any of his past relevant work. At the fifth step, the ALJ determined

---

[6](...continued)
Administrative Record at 14.

[7] In his decision, the ALJ also addressed Johnson's vision problems. The ALJ noted that Johnson had "total loss of vision with glaucoma in his left eye, which was reported to be stable since childhood." Administrative Record at 15. However, with glasses, Johnson's corrected vision in his right eye was 20/30. The ALJ also pointed out that in May 2010, Dr. Shawn D. Beilby, O.D., determined that functionally, Johnson would have "no limitation in [his] ability 'to lift and carry objects, standing, or sitting.' Further, Dr. Beilby noted that [Johnson] would 'need to use caution with moving about, walking, stooping, climbing, kneeling, handling objects, and crawling as there is some limitation to his total filed of view secondary to the loss of vision OS.'" *Id.* The ALJ further pointed out that in June 2010 treatment records showed "stable vision with 20/30 corrected vision in the right eye." *Id.* Lastly, the ALJ noted that in August 2011, Johnson "stated that his vision in the right eye was good with his glasses." *Id.* Johnson was diagnosed with myopia and suspected narrow angle glaucoma in the right eye, but "treatment notes failed to indicate any additional limitations from this suspected diagnosis." *Id.* The ALJ concluded that "[Johnson's] vision impairments do not have more than a minimal effect on his ability to perform basic work activities. As such, these impairments are considered nonsevere." *Id.* at 16.

that based on his age, education, previous work experience, and RFC, Johnson could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Johnson was not disabled.

## B. Objections Raised By Claimant

Johnson argues that the ALJ erred in two respects. First, Johnson argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Safdar. Second, Johnson argues that the ALJ erred by not addressing pertinent non-medical evidence from Goodwill Industries and Genesis Development.

### 1. Dr. Safdar's Opinions

Johnson argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Safdar. Specifically, Johnson argues that the ALJ's reasons for discounting Dr. Safdar's opinions are not supported by substantial evidence in the record. Johnson concludes that this matter should be remanded for further consideration of Dr. Safdar's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.' *Id.*".); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ provided a summary of Dr. Safdar's opinions, including his opinion that Johnson is unlikely to be able to perform full-time employment.[8] In weighing Dr. Safdar's opinions, the ALJ determined that:

> statements that a claimant is "disabled", "unable to work", can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner, such as those of the doctors reported above, can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. However, in this case, the opinions expressed by Dr. Safdar in his letter and questionnaire are inconsistent with the longitudinal objective medical evidence of record, including the psychiatrist's own treatment notes. As discussed throughout this decision, treatment records indicated that [Johnson] was doing well on medications. Notably, medical records showed that the psychiatrist never increased or changed [Johnson's] medications and actually decreased the dosage of one medication during the relevant time period. The undersigned finds this to be inconsistent with the opinions expressed by the psychiatrist. As such, the opinions of Dr. Safdar have been given little weight.

(Administrative Record at 19-20.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*,

---

[8] *See* Administrative Record at 19.

17

143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The Court finds that the ALJ has not fully met these requirements. Significantly, Dr. Safdar did not opine that Johnson is "'disabled', 'unable to work', can or cannot perform a past job, [or] meets a Listing."[9] Instead, Dr. Safdar opined that Johnson's impairments interfere with his ability to perform full-time work.[10] Furthermore, the fact that in his treatment notes, Dr. Safdar found Johnson to be "doing well" on medication while working at a part-time job bagging groceries, does not necessarily lead to a conclusion that Dr. Safdar's treatment notes support the proposition that Johnson is capable of performing full-time work. In fact, the ALJ points to nothing more in the record to support his assertion that Dr. Safdar's opinion that Johnson is limited to part-time work is inconsistent with the objective medical evidence in the record. Moreover, Dr. Safdar's opinion regarding Johnson's questionable ability to perform full-time work is consistent with the opinion of Dr. Stientjes, a consultative examining doctor. Specifically, Dr. Stientjes opined that:

> For the past year [Johnson] has maintained partial employment and, while that is likely to continue, he is unlikely to progress beyond marginal jobs and there could be periods when he is overwhelmed, resulting in decompensation. Full time competitive employment is unlikely to be sustained.

(Administrative Record at 535.)

Additionally, while on medication, and having the ability to work part-time, the record reflects that Johnson needs considerable support from both his parents and social service organizations to live independently. At the administrative hearing, Johnson's

---

[9] Administrative Record at 19.

[10] *Id.* at 629.

father testified that even with medication, Johnson needs almost daily support from himself or Johnson's mother to live independently on his own.[11] Similarly, while in high school, Johnson received help and support from Goodwill Industries in career planning, job searching skills, job application skills, interviewing skills, problem solving, job placement, and job coaching.[12] Johnson received job coaching for nearly a year after starting his part-time job at Fareway. Furthermore, after working with Goodwill, Johnson also received support from Genesis Development, a local rehabilitation organization that provides services to individuals with developmental and chronic mental health disabilities.[13] Genesis Development worked with Johnson from at least 2009 through mid-2011 on independent living skills. The ALJ's decision provides no discussion of the help and support Johnson received from Goodwill or Genesis in finding a part-time job, holding a part-time job, or living independently.

Under these circumstances, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Safdar. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Safdar's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Safdar's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Safdar's opinions and support his reasons with evidence from the record.

---

[11] *See* Administrative Record at 58-65.

[12] *Id*. at 360.

[13] *Id*. at 363-389.

## 2. *Non-Medical Evidence*

The opinions contained in the reports from Goodwill Industries and Genesis Development do not provide opinions from individuals classified as "acceptable medical sources" under the Social Security Regulations. Even though these opinions are not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a social services worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other source" evidence an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ offers no discussion of the opinions of Goodwill Industries or Genesis Development. As discussed in section *V.B.1* of this decision, both Goodwill and Genesis provided Johnson with help and support in finding a part-time job, holding a part-time job, or living independently, for over 3 years.[14] Because the ALJ failed to address these sources, and such sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function," the Court believes that remand for further consideration of these sources is appropriate. *Sloan*, 499 F.3d at 888; *see also Cox*, 495 F.3d at 618 (an ALJ has a duty to develop the record fully and fairly).

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that

---

[14] The record reflects that Goodwill and/or Genesis worked with Johnson from at least April 2008 through July 2011.

the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to Dr. Safdar's opinions; and (2) fully and fairly develop the record with regard to non-medical sources, Goodwill Industries and Genesis Development. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Dr. Safdar's opinions. The ALJ must also fully and fairly develop the record with regard to non-medical sources, Goodwill Industries and Genesis Development.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this  19th  day of May, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA